# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60823-MC- SEITZ / O'SULLIVAN

APRIL MOTTAHEDEH,

        Petitioner,

vs.

UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE, and,
CHRISTINE THAI, Revenue Agent, IRS,
        Respondents.

_____/



FILED by _____ D.C.

APR 0 1 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION

        COMES NOW April Mottahedeh, Petitioner *pro se* (hereafter, "April") and opposes the Magistrate's Report and Recommendation on the grounds listed below:

1.     First: The Magistrate's Report and Recommendation failed to address this point: Petition should not be dismissed since IRS circumvented the Notice Requirements of 26 USC § 7609(a)(1) when IRS previously in 2006 had issued a collection summons under 26 USC § 7609(c)(2) allegedly about April's husband Peymon Mottahedeh (hereafter, "Peymon") in aid of tax collection from Peymon, but later this information was used by the IRS in an examination of April's potential tax liability, thereby improperly bypassing the notice requirements of 26 USC 7609(a), which April was entitled to. The current summons at issue is the fruit of the 2006 poisonous tree summons and therefore both summonses should be quashed for IRS' violation of the 26 USC § 7609(a)(1).

2.   Second: IRS failed to provide April reasonable notice prior to issuing the various summonses of April's records in possession of phone companies and April's Credit Union that contacts with these third parties were made as required under the newly enacted 26 USC § 7602(c)(1). In addition, IRS failed to Periodically provide April with a record of persons contacted by IRS about April as required by the newly enacted 26 USC § 7602(c)(2).

3.   Third: The Magistrate's Report and Recommendation failed to address this point: The instant Summons is a part of a pattern of Summonses issued by the IRS for obtaining information about other parties, also known as a John Doe Summons as defined in 26 USC § 7609(f), without the IRS complying with the requirements of 26 USC § 7609(f).

4.   Fourth: The Magistrate's Report and Recommendation improperly decided this issue: The summons is a part of a pattern of summonses issued for the improper purpose of intruding into the First Amendment activities of April and Peymon and those who choose to exercise their First Amendment Rights in concert with April and Peymon.

5.   Below these points will be explained in detail.

# I. The IRS violated the law by

# failing to give April notice of previous Third Party Summonses

# in violation of 26 USC § 7609(a)(1)

6.   The IRS previously had issued numerous Summonses to obtain records regarding April, or obtained the records without issuing a Summons. See **Exhibit P**, which is the transcript of the February 4, 2009 hearing which was held before the Magistrate. On the following pages of this transcript, the IRS agents who testified at the hearing admitted that IRS had obtained telephone records of April from VERIZON and AT & T, documents from Kathrine Hathaway, as well as a 2006 Summons of the Eastern Financial Credit Union records of April's account, which is the same account that is the subject of the current Petition to Quash IRS

Summons. See pages 28 - 29, 31 - 32, 35 - 36, 39 - 40 of **Exhibit P**.

7. See Also **Exhibits J** which shows that on <u>December 6, 2006</u>, 27 pages of April's AT&T phone bill were received by a Revenue Agent through "DPS" regarding the billing dates of <u>August 15, 2006- November 13, 2006</u> and **Exhibit K** which shows 51 pages of copies of telephone bills from Verizon phone company regarding April's account with them from <u>April 1, 2003 – August 1, 2003</u> .

8. In addition see **Exhibit L**, which are documents that IRS obtained from Kathrine Hathaway about April without issuing a summons at all to Kathrine Hathaway, or giving April notice of such summons. Also see **pages 2 and 3 of Exhibit E**, the San Bernardino County Clerk's marriage records. All of these documents were disclosed by the IRS to April through a Privacy Act Request of April and are a part of April's First Amended Petition. Furthermore see Wells Fargo Bank Mortgage records, **Exhibit O**. Please note the last page of **Exhibit O** on which states: "*The letter from WFB [Wells Fargo Bank] response indicated no copies were available for the following payments. ...*"

9. All of these records were obtained by the IRS in clear violation of 26 U.S.C. § 7609 (a) (1) which states:

> "*(a) Notice (1) ... with respect to, any person (other than the person summoned) who is identified in the summons, then **notice of the summons shall be given** to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons. (2) Sufficiency of notice **Such notice shall be sufficient if**, on or before such third day, such **notice is served** in the manner provided in section 7603... (relating to service of summons) upon the person entitled to notice....* " (Emphasis added.)

10. By these violations of 26 USC § 7609(a) for said records, April was never served a copy of the summons and therefore denied the opportunity to avail herself of the opportunity to quash these Summonses, as was her right under 26 USC § 7609 (a) (1). In addition, the IRS failed to meet the "GOOD FAITH" requirement of the

*Powell* standard by not having served a copy of the previous Summonses on April, of which the current Summons is a continuation of.

11.    Of course no relation can possibly exist between April's AT&T and Verizon phone bills and any potential "Tax Liability" of April. There is no valid reason why April was not served by the IRS with a copy of these Third Party Summonses to AT&T and VERIZON for April's phone records so that April could challenge the summonses. This intrusion of privacy is in direct violation of April's First Amendment rights, April's right to privacy and Title 26 U.S.C. 7609 (a).

12.    IRS claims that in 2006 IRS obtained records of April's Eastern Financial Credit Union Account (hereafter, "CU Account") in a collection summons for IRS' collection efforts against Peymon and then turned around and used those records in an examination investigation of April. By doing this technique, IRS conducted a run around the intent and purpose of 26 USC § 7609 and deprived April of the opportunity guaranteed for April in 26 USC § 7609(b)(2)(A) to "*begin a proceeding to quash such summons...*"

13.    April would not have known that the IRS had issued a summons against her to April's CU Account in 2006 if it was not for the administrative mistake of the Credit Union in not having given the IRS all of the records in the 2006 IRS Summons disclosure of the records by the Credit Union to the IRS. See **Exhibit P**, pages 49 – 50 and the Summons paragraph tree which states: "***Provide missing bank statements** for a/c#94036927-01 from 2/26/05 to 6/21/05.*" Emphasis added

14.    For the same reason that to obtain the "*missing bank statements*" IRS had to issue and serve April with a copy of the summons for April to have an opportunity to quash the IRS Summons, IRS should have provided April with an IRS Summons for obtaining and use of April's CU Account information in examination of her potential tax liability. Now that due to this Credit Union's clerical mistake April has discovered that her Credit Union Records are being used against April in examination of April's civil tax liability she has the right to petition the court for quashing both Summonses and to have both Summonses quashed for IRS'

violation of notice requirements of 26 U.S.C. § 7609 (a) (1). Therefore this court should quash the instant summons which is at issue in the instant case.

15.   Some other information pertaining to April was apparently obtained informally by the IRS, which is direct violation of IRC § 7609 (a), *United States v. Mobil Corp., 543 F. Supp. 507 (N.D.Tex. 12/18/1981)*. Either way, both avenues show BAD FAITH that Respondent was attempting to obtain documents without first notifying Petitioner. This was NOT the intent of Congress. Congress drew strict rules on how the IRS is supposed to acquire information about taxpayers. The IRS is required to use Summonses to inquire and acquire information on taxpayers. More importantly, IRS is required to give notice to the person, whose records are being summoned so said person may have the opportunity to object. (*See IRC § 7609 (a)*). The following legislative history of the IRS summons power as cited by *Mobil, supra*, is informative:

> *"In addition to the structure of the Code, (IRC § 7609), the limited legislative history of Sections 7602-7610 suggests that Congress intended that these provisions were to be the sole means under the Code for obtaining taxpayer records held by third parties. Senator Haskell, the Chairman of the Senate subcommittee which, in 1976, reported amendments to the provisions of the Code concerning administrative summons, remarked on the Senate floor concerning the new provision governing the issuance of "third party" summons, Section 7609:*
>
> *PROTECTION OF THE TAXPAYERS' RIGHTS AND PRIVACY.*
>
> *Mr. Haskell. Mr. President, I rise to briefly clarify a point raised about a provision in the tax bill, H.R. 10612, which we have just passed. The provision in question, Sec. 1205, restricts the use of administrative summons by the IRS to gain access to records held by third parties, such as banks, brokers, lawyers, and accountants.*
> ***The question which has been raised is whether these rules are the exclusive method of access to these records or whether the IRS can avoid these rules and get the records by informal access without any type of summons.***
>
> *As chairman of the Administrative Subcommittee of the Finance Committee, I studied this issue in depth. Senator Doyle, the ranking Republican on the*

*subcommittee, and I proposed the provision to the committee and it was adopted.*

*We heard much testimony on the abuses of taxpayer's rights by the IRS in various situations. As a result, the tax bill contains many administrative provisions designed to protect the taxpayers' rights and privacy and limit the unbridled power of the IRS to examine a taxpayer's records. **In the future, the use of an administrative summons will <u>require</u> the person whose records are sought to have <u>notice and the opportunity to object</u> and require the more formal processes of a court-ordered summons. We drew these <u>strict rules to protect the right of privacy that we felt every citizen expects, and rightfully so, in their personal bank records, lawyer's files, et cetera.</u>***

***At no time did we discuss the questions of allowing informal access to these records without a summons of any sort.** We carefully defined the safeguards and spelled out several extraordinary situations in which these procedures can be avoided where they might jeopardize an investigation or the safety of a witness. It seems to me absurd to suggest that the Congress would act so clearly to protect citizens from the processes of an agency and make those protections optional, binding only when the agency chose. ... (emphasis supplied). 127 Cong.Rec. 34772 (1976) (Comments of Sen. Haskell, Chairman, Administrative Subcommittee of Senate Finance Committee.)*" Emphasis added.

It is clear that Congress wanted to restrict the IRS' Summons as well as how they gain access to records held by third party record keepers. IRS by getting the records of April under a Collection summons for Peymon by Agent Black and then Agent Black's transferring the file to Agent Thai without providing April a notice of the original Credit Union Summons To allow Respondent to acquire and maintainrecords held by Third Party Record Keepers by any other means would be a violation of Petitioner's right to privacy as well as the intent of Congress when enacted the new revision of IRC § 7609.

## II. <u>IRS failed to provide April notice in advance of contacts with these third parties were to be made and failed to Periodically provide April with a record of persons contacted by IRS about April</u>

## as required in 26 USC § 7602(c)

16.    IRS obtained records from AT & T (**Exhibit J**) , VERIZON (**Exhibit K** )  and
       Kathryn Hathaway (**Exhibit L**),  Post Office records of April's company (**Exhibit
       M**), County of San Bernardino Tax Collector (**Exhibit N**), Wells Fargo Bank
       Mortgage records (**Exhibit O** ) (see last page of Exhibit O which states :"The
       letter from WFB [Wells Fargo Bank] response indicated no copies were available
       for the following payments.:...) were all obtained by the IRS in violation of 26
       USC § 7602 (c). 26 USC § 7602 (c) in its pertinent parts provides:

"***1) General notice.***--*An officer or employee of the Internal Revenue Service **may not
contact any person** other than the taxpayer with respect to the determination or
collection of the tax liability of such taxpayer **without providing reasonable notice in
advance to the taxpayer** that contacts with persons other than the taxpayer may be made.
**(2) Notice of specific contacts.**--The Secretary **shall periodically provide to a taxpayer a
record of persons contacted during such period** by the Secretary with respect to the
determination or collection of the tax liability of such taxpayer. Such record shall also be
provided upon request of the taxpayer.* "

26 C.F.R. § 301.7602-2(b) defines third party contact as: "*Contacts subject to section
7602(c) and this regulation shall be called "third-party contacts." A third-party contact is
a communication which—*

*(1) Is initiated by an IRS employee;**(2) Is made to a person other than the taxpayer; (3)**
Is made with respect to the determination or collection of the tax liability of such
taxpayer; **(4) Discloses the identity of the taxpayer being investigated; and (5) Discloses
the association of the IRS employee with the IRS.*" Emphasis added.

17.    See second part of example 3, example 4 and example 6(b) of 26 C.F.R. §
       301.7602-2(b) that squarely show that IRS was required to notify April of IRS'
       intent to contact the above-mentioned third parties before contacting the third
       parties. Clearly IRS contacted other persons, as noted above about April, without
       giving April notice. The record is absent of any proof that the IRS issued any kind
       of pre-contact notice to April before contacting these third parties that were
       contacted by the IRS. This is a violation of 26 USC § 7602 (c)(1) and its
       regulations by the IRS and renders those Summonses void and the instant
       Summons is the fruit of the poisonous tree of the 2006 Credit Union Summons

that the IRS failed to give April the pre-contact notification. Therefore both of the summonses issued to the Credit Union are void for IRS' violation of the initial summons issued to the Credit union.

18.   The regulation of 26 U.S.C. § 7602 (c)(2) fails to provide any details as to how often the IRS "*shall periodically provide to a taxpayer a record of persons contacted during such a period by the secretary.*" Absent such a regulation, it would be proper to presume that one year is he most likely period intended by the IRS, since one year period is by far the most common time period used by Congress in the IRS code (followed by 3 months or a quarter being the second most often period used by Congress in the IRS Code). The record is absent of any proof that the IRS provided any post-contact notice to April and therefore IRS violated 26 USC § 7602 (c)(2) as well.

## III. The instant summons is a part of a pattern of summonses issued by the IRS for obtaining information about John Does conducted by the IRS without complying with 26 USC § 7609(f).

19.   The first part of **Exhibit Q** is a copy of 5 Summonses issued by IRS agent Christine Thai, who issued the instant Summons, on March 19, 2009, several days after the Magistrate's Report and Recommendation was dated, Summonses were issued to 5 various hotels that Freedom Law School, whom Peymon is its President of has held annual Freedom Conferences from 2001 to 2006, allegedly in regards to potential tax liabilities of April. The second part of **Exhibit Q** is the same identical summonses issued to the same hotels, about the years 2001 to 2006, allegedly about the potential tax liability of Peymon.

20.   These Conferences are, open to the public, politically oriented Conferences in which a variety of over 12 speakers at each Conference speak about a variety of controversial and politically important issues related to nutrition, health, Government corruption, misconduct of various agencies and agents, including but

not limited to, the IRS, banking and monetary systems, Governmental structure, plans, the Media's lack of reporting these issues and other politically charged issues that the American people have the right to gather about, to hear, share information and literature about, ʋpeak about and discuss redresses for their grievances as guaranteed by the First Amendment of the U.S. Constitution. A copy of the brochure of said Conferences which advertised these Conferences to the public at large is attached as **Exhibit R**.

21.   The Summonses that the IRS Agent Thai (hereafter, "Agent Thai")  issued in **Exhibit Q**, on the last and separate paragraph of each summons to these hotels, in identical language asks these hotels where these Conferences were held at to: "***Provide a rooming list , a list of attendees at this seminar.*** *Their invoices which showed name, address and invoices of rooms paid by Freedom Law School.*" [Emphasis added.]

22.   **Exhibit S** is the March 12, 2008 Privacy Act Request of Peymon, which Peymon had sent to the IRS. **Exhibit T** is the April 30, 2008 disclosure of the IRS disclosure officer Gary T. Prutsman in response to this Privacy Act Request, in which on the third paragraph states that the IRS is "*Withholding six pages in part and 18 pages in full ...*" **Exhibits U through Exhibit Z** are all a part of the documents that the IRS disclosed to Peymon in its April 30, 2008 disclosure (**Exhibit S**) to Peymon. **Exhibit U** is an Internet printout of the speakers of the 2003 health and Freedom Rally which was held on March 22-23, 2003 in Irvine, California.

23.   **Exhibit V** is the first 2 pages of the third party summons that IRS agent S. Johnson on March 31, 2003 issued to Raddison Hotel about the Freedom Law School's Conference, which was held at Radisson Hotel on March 20, 2002. **Exhibit W** is the first 2 pages of the third party summons that IRS agent S. Johnson issued to Hilton Hotel on September 15, 2003 about the November 2 – 3, 2002 Conference of Freedom Law School. On page 2 of **Exhibit W** is a "FAX TRANSMITTAL COVER SHEET" issued and initialed by IRS agent S.

JOHNSON, which on top of the page is handwritten "per our conversation" and in the text of it states: "*Message: RE; HILTON'S RESPONSE TO SUMMONS DATED 8/15/2003. RE; FREEDOM RALLY NOVEMBER 2-3, 2002. Is there a rooming list of attendees at this seminar. It appears that 100 plus individuals attended this conference. **I received a list on what appears to be attendees whose costs were paid by Freedom Rally sponsors. Request names/addresses on all those who received the hotel special rate.***" Emphasis added.

24.   **Exhibit X** is an Internet printout of the 2008 Justice, Peace, and Freedom Conference which was held on <u>March 28 – 31, 2008</u> in Irvine, California and was printed on a printer on <u>March 10, 2008</u>.

25.   **Exhibits Q through X** show a clear pattern: IRS for many years (at least since 2002) has consistently attempted to obtain the name, addresses of those individuals who have attended Freedom Law School's annual Freedom Conferences which Peymon with the assistance of April has been organizing.

If the IRS wishes to obtain information about a group of unknown individuals, IRS must obtain such information or documents by use of a John doe Summons as prescribed by 26 U.S.C. § 7602 (f) which states:

"*(f) Additional requirement in the case of a John Doe summons.--Any summons described in subsection (c)(1) **which does not identify the person** with respect to whose liability the summons is issued **may be served only after a court proceeding in which the Secretary establishes that—***

*(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons, (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.*"

26.   It is undisputed that the IRS had not previously initiated a court proceeding to establish any of the above cited criteria to seek the record of this "*ascertainable group or class or persons*", namely attendees of Freedom Conferences of Freedom

Law School. Therefore the IRS may not have gotten these records before and now can not use the subterfuge of the Credit Union Summons to get information about Freedom Law School Conference attendees.

## IV. The summons is a part of a pattern of summonses issued for the improper purpose of intruding into the First Amendment activities of April and Peymon and those who choose to exercise their First Amendment Rights in concert with April and Peymon.

27.     **Exhibit Y** is the Declaration of Candidacy that Peymon Mottahedeh filed with the San Bernardino County Registrar of Voters on <u>September 5, 2003</u>, for running as a candidate of the Libertarian party for the 41 Congressional District seat and other papers related to it that were filed with the San Bernardino County Registrar of Voters.

28.     **Exhibit Z** is Agent Thai's "*Examining Officer's Activity Record*", which under the "*03/07/08*" "*Contact and activities*" states: "*Met with counsel and his manager, collection officer and his manager, ATAT agent and her manager, RA and her manager to discuss about the cases. I was told by counsels to open nonfiler for 2001 through 2006 for Peymon, follow normal procedure, don't request returns or due date of returns, send contact letter with third party contact. Set up an appointment at San Bernardino office then serve summons at the hotel, counsel will review language.*" And a few rows down by "*3/12/08*" and "*3/17/08*" it states: "*Got to Freedom Law School website. Read all information and prepared summon.*" "*Met with counsel to review summon language.*"

29.     **Exhibit A1** is the copy of the First Party summonses that Agent Thai and her associate served personally on April and Peymon each on <u>March 28, 2008</u> at Radisson Hotel in Irvine where the 2008 Justice, Peace, and Freedom Conference was held along with a proper third party contact notification as required by 26 U.S.C. § 7602 (c)(1) . **Exhibit A2** is the <u>April 26, 2008</u> written response of April

and Peymon to Agent Thai, offering to meet with Agent Thai in good faith and willingness to communicate, while warning agent Thai that April and Peymon believe that Agent Thai and other IRS agents have been brazenly attempting to ignore the First Amendment Rights of many Americans including that of Peymon and April.

30.    The respectful and cooperative letter of April and Peymon speaks for itself. Agent. Agent Thai failed to clarify her vague and unclear summons request. It has been over one year now and Agent Thai has neither given a responsive response to April 26, 2008 Letter of Peymon and April (**Exhibit A1**), ( also **see Exhibit P, pages 65-67**)  nor has she rescinded her First Party Summonses against Peymon and April. Under 26 USC § 7605(a) Agent Thai must work with Peymon and April to come up with a reasonable time and place for the First party Summons meeting. Agent Thai's silence shows bad faith on Agent Thai's part and suggests that Agent Thai is attempting to hide improper purposes of Agent Thai's First Summonses against Peymon and April.

31.    Another point is **Exhibit Y**. How can the papers that Peymon filed with the San Bernardino Registrar of Voters have in any shape or form have any relation to collecting a tax liability of Peymon? Obviously there is no such connection. In fact such a summons would chill many individuals desire to run for office only to come under greater the IRS' scrutiny.

32.    **Exhibit Z** is most suspicious. Why would 8 IRS agents and counsel meet to discuss Peymon's case? Isn't the 3 various type of IRS agents meeting with their immediate supervisors and an IRS lawyer and the lawyer's supervisor a little overkill? Is this normal examination activity of the IRS? Not likely!

33.    Agent Thai testified that she did not call or organize this meeting of 8 individuals about Peymon. See **Exhibit P, pages 57 – 60**. Therefore the meeting about Peymon was initiated by a "higher up" manager or Counsel. In fact, Agent Thai is clearly acting under the close direction and supervision of counsel since Agent Thai says that "*I was told by **counsels** to open non filer for 2001 through 2006 for*

*Peymon,...*" .Not only **both** of the lawyers in the meeting (counsels) are directing Agent Thai's actions, but these lawyers further directed Agent Thai to "*follow normal procedure, don't request returns or due date of returns,... Counsel will review the language*". See also **Exhibit P pages 57 – 59**. Again Counsel are closely reviewing and guiding the actions of Agent Thai.

34.    What is most suspicious is the counsel's advise/direction to Agent Thai to "*open non filer for 2001 through 2006 for Peymon, follow normal procedures*" then counsel tell Agent Thai to make a swift departure from normal procedures and tell Agent Thai: "***don't request returns or due date of the returns.***" Is it not the normal practice of the IRS if IRS believes that a return may need to be filed by a taxpayer who has not filed one to ask the taxpayer to file one? Then **why is counsels directing Agent Thai to make such a radical departure from normal procedures of the IRS?**

35.    The answer is rather obvious. These Summonses to Peymon and April are not ordinary run of the mill garden variety examination or collection summonses. The primary motive of all of the agents that have summoned any records about Peymon, Freedom Law School and Freedom Law School's Freedom Conferences is not to assess, collect a tax. Their goal is to get the list of the individuals who may share the same beliefs about Government and the IRS misdeeds, not a civil tax liability examination.

36.    Here is a short list showing IRS' unusual behavior in summoning Peymon and April: A) Agent S. Johnson allegedly was attempting to collect a tax from Peymon, yet in **page 2 of Exhibit W** shows that Agent S. Johnson is highly interested in getting the name and addresses of all who received the hotel's special room price which Freedom Law School had negotiated for Conference attendees. B) Page 2 of Exhibit V is a Memo from a "*M*eredith" to "*Erica Heather, Mark Reid*" and cc'd to "*Terry Illiano, Karen Anthony*" about Freedom Law School's hotel room night guarantees and the rooming list." Why in 2003 does it take 5 agents to collect just some tax? In 2008 the number of agents that it takes to

examine Peymon has increased to 6 meeting together and they need to have 2 lawyers directing the agents as to what to do and that the lawyers will "review the language" of the letters after telling the agent to depart from the normal procedures and **not** ask for returns after opening a non filer file for Peymon. The answer is that it does not take 5 agents to work a civil examination case. There are other motives behind this IRS facade of a simple civil tax examination.

37.    C) Peymon in his testimony before the magistrate attempted to tell the court about how he came to believe that the IRS wishes to infringe on the First Amendment rights of Peymon, April and others who may share April and Peymon's views on Government Corruption and misdeeds. See **Exhibit P, pages 79 - 84**. However on **page 84, lines 7 through age 85 line 12 of Exhibit P** the Magistrate erroneously told Peymon that "I am going to limit your" answers and then erroneously stated: "I mean, that's fine. **You are telling me that they [IRS] requested documents regarding people who stayed there during the time that you were giving the seminar. That's fine.**"

38.    Another case of IRS trying to get the records of attendees of Freedom Law School Conferences is found in the **last 3 pages of Exhibit A1** which is the withdrawal of the IRS summons to Atrium Hotel. The copy of this withdrawn summons is found **22 and 23 pages inside Exhibit A1**. This summons issued by IRS Special Agent Tambornini on its second page asks for "*Name addresses and telephone numbers of the promoters, participants and attendees of the 2006 Health & Freedom Conference.*" This improper Summons was removed by the IRS after Peymon and April filed a lawsuit against Agent Tambornini for Agent Tambornini's attempt to violate the exercising of First Amendment rights by April and Peymon. See also **Exhibit P, pages 85 – 86**. These repeated attempts of various IRS agents to get information about the attendees and participants of Freedom Law School Conferences can not be attributed to accident. **This shows an institutional desire on the part of higher up IRS managers who use lower level IRS agents like Tambornini, Thai, Black, Johnson and others to use the IRS summons power**

**to interfere with Peymon, April and other Citizen's who may be interested to hear the view of Peymon or the Conference speakers to exercise of their First Amendment rights at Freedom Law School's Freedom Conferences.**

39. Apparently these blatant violations of First Amendment rights of Peymon and April did not shock the conscience of the Magistrate, since Freedom Law School is not the National Association for the Advancement of the Colored People (NAACP) or the American Civil Liberties Union (ACLU) or a pornographer, a Nazi or a Communist. These groups may and do express their political views and maintain their privacy and not fear the Government getting their name and address on a Government list of some kind. But minor groups like Freedom Law School do not enjoy the same Constitutional Protections as more politically powerful groups like NAACP or the ACLU and the Government getting a list of their like-minded people is "*fine*."

40. Apparently these comments of the Magistrate encouraged the IRS and its counsel who are directing Agent Thai's actions to feel more confident in opening their true hand and issued the <u>March 19, 2009</u> summons to all the Hotels who their list of Conference attendees were not handed over by the to the IRS in order to get the rest of the names and addresses of these Conference attendees.

41. As a result of the Magistrate's failure to protect the First Amendment Rights of April, Peymon and like-minded people, Agent Thai (hereafter, "Agent Thai") issued **Exhibit Q**, 5 summonses to against Peymon and April each, to 5 Hotel's that previous Conferences were held on the last and separate paragraph of each summons to these hotels, in identical language asks these hotels where these Conferences were held at to: "***Provide a rooming list , a list of attendees at this seminar***. *Their invoices which showed name, address and invoices of rooms paid by Freedom Law School*." [Emphasis added.]

42. This kind of outrageous and shocking, blatant violation of First Amendment rights is what this honorable court needs to curb by not allowing the IRS to misuse its broad powers of investigation for improper purposes like violation of citizen's

First amendment Rights. Quashing all of the Summonses that were issued to the Credit Union would be the proper start to curb the IRS' examination powers to it lawful and Constitutional limits.

43. <u>R. Lamura v. United States</u>, 765 F.2d 974 which the magistrate relies on is factually very dissimilar from the instant case. In *Lamura, Supra*, IRS was summoning the Church records to ascertain the correctness of donations given to the Church by Lamura. There was no evidence of IRS' attempt to intrude on the First Amendment rights of the Church or Lamura.

44. In the instant case however, the record is filled with repeated attempts of at least 4 IRS agents over 5 year time period to obtain name and addresses of Freedom Law School's Conference attendees. By not addressing the factual distinctions between *Lamura, supra* and the instant case, the magistrate erroneously relied on *Lamura, supra* which is very different from the Instant set of facts. Interestingly, in *Lamura, supra* the IRS abandoned its attempts to reverse the District Court's denial of summons of the telephone company records. Apparently IRS realized in *Lamura, supra* that phone records have no value in determining the correctness of a taxpayer's potential tax liability.

45. The First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech." *The First Amendment protects the expression of ideas irrespective of what they are or the medium by which they are expressed, United States v. Stewart*, 336 F.Supp. 299, 302 (E.D.Pa. 1971), *even if the speech is deemed to be false or harmful. Virginia v. Black*, 538 U.S. 343, 358 (2003). Protected speech includes the right to utter, print, distribute, receive, read, inquire about, contemplate, and teach ideas. *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965). It also includes the right to freely associate with others for expressive purposes. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995). Protected speech includes conduct designed to express and convey ideas. *New Orleans S.S. Ass'n v. General Longshore Workers*, 626 F.2d 455, 462 (5th Cir. 1980), *aff'd Jacksonville Bulk Terminals, Inc. v. International*

*Longshoremen's Ass'n*, 457 U.S. 702 (1982).

46.    The First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech." *The First Amendment protects the expression of ideas irrespective of what they are or the medium by which they are expressed, United States v.Stewart*, 336 F.Supp. 299, 302 (E.D.Pa. 1971), *even if the speech is deemed to be false or harmful. Virginia v. Black*, 538 U.S. 343, 358 (2003). Protected speech includes the right to utter, print, distribute, receive, read, inquire about, contemplate, and teach ideas. *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965). It also includes the right to freely associate with others for expressive purposes. *Freeman v. City of SantaAna*, 68 F.3d 1180, 1188 (9th Cir. 1995). Protected speech includes conduct designed to express and convey ideas. *New Orleans S.S. Ass'n v.General Longshore Workers*, 626 F.2d 455, 462 (5th Cir. 1980), *aff'd Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n, law whether or not they are true. New Orleans S.S. Ass'n*, 626 F.2d at 462 (5th Cir. 1980).

47.    This court should quash the instant summon of the IRS. If the courts still is of the opinion that it needs more proof of improper motive of the IRS, since April has made a colorable claim of First Amendment violation attempts by the IRS, this court should allow discovery to allow April to obtain the records from the IRS that would further support her contention of improper motive by the IRS to violate the First Amendment Rights of April, Peymon and those who may be interested in hearing or share the views of Peymon, April and or the Speakers of the Freedom Conferences of Freedom Law School.

## Conclusion

Whereas:

48.    IRS did not give notice of the Original Credit Union Summons to April as required by  violated the third party notice 26 USC § 7609(a)(1), and

49.    IRS did not give Third party contact notice to April before or after issuing either

of the Credit union summonses as required by 26 USC § 7602 (c), and

50.   IRS did not go to court for approval of a John doe Summons to get information or documents about unnamed persons in the Other summonses that were related to the Credit Union Summonses as required in 26 U.S.C. § 7602 (f). and

51.   IRS' summonses of the IRS against Peymon and April for at least the past 5 years and recently have been issued for the improper purpose of infringing on the First amendment Rights of Peymon, April and other individuals who wish to hear or share the views of Peymon or other speakers at Freedom Law School's Conferences,

52.

Wherefore: This Court should:

1.   QUASH the alleged third party administrative summons dated <u>May 12, 2008</u> and EXPUNGE all other Administrative Summons regarding Aprils' records that were directed to the Eastern Financial Florida Credit Union, for the records pertaining to April Mottahedeh, which no notice was given to April by IRS;

2.   ORDER that the IRS turn over to Petitioner, April, any and all copies of documentation that was issued by IRS to the Third Parties to obtain the aforementioned records.

3.   ORDER that the IRS turn over to Petitioner, April, any and all records that were obtained, in its investigation of Petitioner April, by means that were not in full compliance with the summonsing provisions of the Internal Revenue Code section 7602, et seq. and specifically section 7609(a).

4.   ORDER that **Exhibits C-O** be **expunged** from April's records because the IRS violated the law by failing to give April notice of the previous Third Party Summonses for said records, so April could have availed herself of the opportunity to quash the Summonses, as was her right. In addition, the IRS failed to meet the "GOOD FAITH" requirement of the *Powell* Standard by not having served a copy of the previous Summonses on April.

5.    ORDER that the IRS **expunge** any and all documents NOT pertaining directly to April in her IRS records.


Date:   3-31-09                              *[signature]*

April Motttahedeh, Pro Per
9582 Buttemere Road
Phelan, CA 92371
(760) 868-5834

## CERTIFICATE OF SERVICE

I, April Mottahedeh, a Citizen of the state of California who is over the age of 21, do hereby certify that I have sent the a copy of my

"Plaintiff's Opposition to Magistrate's report and Recommendation"
In the case of April Mottahedeh v. United States of America,

### Case No. 08-60823-MC- SEITZ / O'SULLIVAN

 to the addressee indicated hereinafter, postage having been paid in full, via the United States Postal Service, on this March 31, 2009.

Service list:  Maureen Donlan
               Assistant U.S. Attorney
               99 N.E. 4th Street, Suite 300
               Miami, FL 33132

April Mottahedeh
9582 Buttemere Rd.
Phelan, California 92371

UNITED STATES DISTRICT COURT • SOUTHERN DISTRICT OF FLORIDA

# ATTACHMENT(S)
# NOT SCANNED/SCANNED
## and are available in the
# SUPPLEMENTAL PAPER FILE

# PLEASE REFER TO COURT FILE MAINTAINED IN THE OFFICE WHERE THE JUDGE IS CHAMBERED

**CASE NO.** _08 − 60823 mc − PAS/ssd_

**Date** _4/1/09_

☒ **DUE TO POOR QUALITY**
☐ VOLUMINOUS (exceeds 999 pages = 4 inches)
   consisting of (boxes, notebooks, etc.)_____
☐ BOUND EXTRADITION PAPERS
☐ ADMINISTRATIVE RECORD (Social Security)
☐ ORIGINAL BANKRUPTCY TRANSCRIPT
☐ STATE COURT RECORD/TRANSCRIPT (Habeas Cases)
☐ SOUTHERN DISTRICT TRANSCRIPTS
☐ LEGAL SIZE
☐ DOUBLE SIDED
☐ PHOTOGRAPHS
☐ SURETY BOND (original or letter of undertaking)
☐ CD's, DVD's, VHS Tapes, Cassette Tapes
☒ OTHER = _Confidential Information_